Filed 2/22/24  In re Lei. P. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Lei. P. et al., Persons Coming Under the Juvenile Court Law. | B323464 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> L.P., <br><br> Defendant and Appellant. | Los Angeles County Super. Ct. Nos. 22LJJP00197A & 22LJJP00207A |

APPEAL from orders of the Superior Court of Los Angeles County, Donald A. Buddle, Jr., Judge. Affirmed and remanded with directions.

Gina Zaragosa, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel for Plaintiff and Respondent.

## INTRODUCTION

L.P. (father) appeals from the juvenile court's family law exit orders terminating dependency jurisdiction over his two youngest children, Lev. P. (Lev) (born February 2019) and Lei. P. (Lei) (born July 2020). Father challenges the court's jurisdiction findings, arguing there is insufficient evidence that his use of a belt to discipline his eldest child, Las. P. (Las) (born January 2014),[1] placed Lei and Lev at risk of being abused or neglected. Father also challenges the exit order pertaining to Lev, arguing the court erred by recommending he participate in various parenting and counseling services and by failing to establish a minimum number of visits he is entitled to have each month with Lev. We agree the matter must be remanded so that the juvenile court can correct the exit order as to Lev by specifying the frequency and duration of visits with Lev. In all other respects, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Father has three children: Las, Lev, and Lei. Vanessa L. is Las's mother, Tamera A. is Lev's mother, and Laura L. is Lei's mother. When the family came to the attention of the Department of Children and Family Services (Department), Las lived with father, and Lev and Lei lived with their mothers. Father was dating Lei's mother, and she and Lei would sometimes sleep at father's house. Under a family law custody order, Lev's mother had physical custody of Lev, and father had

_____

[1] Father does not challenge any of the court's orders concerning Las.

unsupervised weekend visits with the child. Father hadn't visited Lev since February 2022.

In mid-May 2022, the Department and law enforcement began investigating the family after receiving reports that father physically abused and refused to feed Las. Las reported that father has hit her with a belt "a lot of times." He recently struck her 10 times with a belt, hit her arm with a hairbrush, and threw a shoe at her face. Las also claimed Father once punched her stomach when she misbehaved. A sheriff's deputy who interviewed Las observed swelling on the child's right arm, multiple belt marks on her thighs and buttocks, and scars caused by a belt on both of her legs.

Father admitted he strikes Las with a belt because she often gets in trouble at school and at home. He recently "whooped" Las's buttocks after she was caught touching another student's "private parts." Father doesn't hit Las "all the time," and he never struck her with a hairbrush, a shoe, or his fist. Father sometimes uses other forms of discipline, such as talking to the child or putting her on time out. Father claimed he feeds Las three meals a day, but he doesn't allow her to have snacks when she misbehaves.

Lei's mother knew father strikes Las with a belt because the child has "a lot of behavioral issues at home and school." Father never struck Lei, however.

Lev's mother has been Lev's sole caretaker for over two years. Although father has never hit Lev, Lev's mother was concerned for the child's safety around father because of his use of excessive physical discipline on Las.

The children's paternal grandmother told the Department that she used to hit father with a belt when he misbehaved as a

3

child. She told father not to use the same disciplinary method on Las because it never worked on him. The grandmother saw a "couple" of marks on Las when she helped the child change clothes.

In late May 2022, the Department filed separate dependency petitions on behalf of Lei and Lev.[2] The petitions, which included identical allegations, asserted father physically abused Las and caused the child to suffer bruising and swelling by striking her arms, thighs, and buttocks with a belt, striking her arm with a hairbrush, and punching her in the stomach, and that such abuse placed Lei and Lev at risk of serious physical harm. (Welf. & Inst. Code,[3] § 300, subds. (a), (b), & (j); a-1, b-1, and j-1 allegations.) The court found Lei's and Lev's petitions alleged prima facie cases under section 300, subdivisions (a), (b), and (j) and detained the children from father's custody.

The Department interviewed the family in June 2022. Father confirmed that he hits Las with a belt when she misbehaves, and he acknowledged that he could have used "other forms of discipline" on the child. Father continued to deny hitting Las with a hairbrush, a shoe, or his fist.

Lei's mother knew father "gives [Las] whoopings but he goes into another room because [Lei] do[es]n't like loud noise[s]." According to Lei's mother, father would strike Las with a belt when the child misbehaved at home or at school. Lev's mother didn't believe it was inappropriate for father to use a belt to strike Las because she never saw bruises on the child. Lev's

_____

[2] The Department also filed a petition on Las's behalf.

[3] All undesignated statutory references are to the Welfare and Institutions Code.

mother claimed she "would've stopped it" if father became too abusive toward Las. Lev's mother also claimed Las may have lied when she claimed father hit her with a hairbrush and shoe.

As of late July 2022, father was enrolled in an effective parenting program, an anger management program, and individual counseling. Father was at risk of being dropped from the effective parenting program because he missed a "significant amount of classes."

The court held the jurisdiction hearing in mid-August 2022. As to Lei and Lev, the court dismissed the a-1 and b-1 allegations and sustained an amended version of the j-1 allegation.[4] Specifically, the court struck language that father "physically abused" Las and replaced it with language that he used "excessive [physical] discipline" on the child. The court also struck language that father hit Las with a hairbrush, threw a shoe at the child's face, and punched the child in the stomach. The court granted Lei's mother sole physical custody of Lei, Lev's mother sole physical custody of Lev, and father monitored visits with each child. As to Lei and Lev, the court terminated dependency jurisdiction, pending approval of a family law exit order.

In late August 2022, the court signed Lei's and Lev's exit orders and terminated dependency jurisdiction. As to Lei, the court awarded father monitored visits "3x a week for 3 hours, minimum," and it authorized Lei's mother, a mutually agreed

---

[4] The court sustained Las's petition under section 300, subdivision (b), finding father's use of excessive physical discipline put the child at serious risk of physical harm.

upon monitor, or a professional monitor paid for by father, to supervise the visits. As to Lev, the court awarded father monitored visitation, and it authorized Lev's mother, a mutually agreed upon monitor, or a professional monitor paid for by father to supervise the visits. The court also recommended father complete various parenting and counseling services "prior to modification" of Lev's exit order.

Father appeals.

## DISCUSSION

### 1.    Jurisdiction Findings

Father contends the court erred in sustaining Lei's and Lev's petitions because the Department failed to prove his use of excessive physical discipline on Las endangered their safety. As we explain, substantial evidence supports the jurisdiction findings under section 300, subdivision (j).

A court may exercise jurisdiction over a child under section 300, subdivision (j), where the child's sibling has been "abused or neglected" as defined under subdivisions (a), (b), (d), (e), or (i) of the same statute, if there is "a substantial risk that the child will be abused or neglected, as defined in those subdivisions." (§ 300, subd. (j).) The court "shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child." (*Ibid*.) In other words, the court should " 'consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the

subdivisions enumerated in subdivision (j).' " (*In re I.J.* (2013) 56 Cal.4th 766, 774.)

The juvenile court doesn't need to wait until a child is seriously injured before asserting jurisdiction if there is evidence that the child is at risk of future harm because of the parent's conduct. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993.) The court may consider past events as an indicator of whether the child faces a current risk of harm because "[a] parent's past conduct is a good predictor of future behavior." (*In re T.V.* (2013) 217 Cal.App.4th 126, 133 (*T.V.*).) A parent's denial of wrongdoing or failure to recognize the negative impact of the parent's conduct is also relevant to determining risk under section 300. (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 (*A.F.*).)

We review a juvenile court's jurisdiction finding for substantial evidence. (*In re E.E.* (2020) 49 Cal.App.5th 195, 206.) We will affirm the finding if it is supported by evidence that is reasonable, credible, and of solid value. (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.) We review the record in the light most favorable to the court's findings and draw all reasonable inferences from the evidence in favor of those findings. (*In re R.T.* (2017) 3 Cal.5th 622, 633.) As we explain, substantial evidence supports the court's findings that father's use of excessive physical discipline on Las placed Lei and Lev at serious risk of being abused or neglected under section 300, subdivision (j).

As a threshold matter, father doesn't dispute that substantial evidence supports the court's finding sustaining jurisdiction over Las under section 300, subdivision (b). Indeed, the record is replete with evidence that father subjected Las to excessive physical discipline. In May 2022, Las told law

enforcement that father recently struck her 10 times with a belt, and she told the Department that she remembers father hitting her "a lot of times." Father confirmed that he frequently strikes Las with a belt when she misbehaves, although he denied using other forms of physical discipline on the child. The sheriff's deputy who interviewed Las observed scarring and belt marks on the child's legs and thighs, as well as swelling on the child's arm. One of the Department's social workers also observed swelling and redness on Las's arm, and the child told the social worker she had "bruising on her legs and buttock area due to her father hitting her with a belt." (See *In re Mariah T.* (2008) 159 Cal.App.4th 428, 438 [mother's use of a belt to inflict "deep, purple bruises" on child supports jurisdiction]; *In re David H.* (2008) 165 Cal.App.4th 1626, 1645 [mother's repeated use of belt to inflict "bruises, linear red marks, welts and broken skin" supports jurisdiction].)

Nevertheless, father argues, Lei and Lev did not face a risk of being abused or neglected because they were differently situated than Las. Specifically, father argues, Lei and Lev were not at risk of being harmed by him because they were younger than Las, lived with their mothers, and did not have the same behavioral problems as Las. We disagree.

Before the Department began investigating him, father had access to Lei and Lev. Lei's mother reported that she and Lei often visited father and sometimes slept at his home. Lei's mother also reported that father would strike Las with a belt while Lei was at his home. And although father hadn't seen Lev for several months by the time the Department received the initial referral, he was entitled to unsupervised visits with her every weekend.

The court also could infer that father would strike Lei and Lev with a belt if they misbehaved while under his supervision based on his extensive history of doing the same to Las. (See *T.V.*, *supra*, 217 Cal.App.4th at p. 133 [a parent's past conduct is a good predictor of future behavior].) According to Las, father hit her "a lot of times" with a belt when she got into trouble at home and at school. Although father claimed he sometimes used other, non-violent methods of discipline, he admitted he frequently hit Las with a belt when she misbehaved. The children's paternal grandmother and Lei's mother were also aware that one of father's primary methods of disciplining Las was to strike the child with a belt. While Lei and Lev are younger than Las, they are still old enough to misbehave. And their younger ages make them more vulnerable to suffering serious injury if father were to hit them with a belt.

Importantly, father showed a lack of insight into the severity of his disciplinary methods. While father acknowledged he could have used less violent means to correct Las's behavior, he also minimized his conduct. He blamed Las for his decision to strike her with a belt, and he didn't believe his use of a belt was excessive, despite inflicting several visible injuries on the child. (See *A.F.*, *supra*, 3 Cal.App.5th at p. 293 [mother's failure to appreciate seriousness of her conduct supports finding that she continued to pose a risk of harm to her child].) And although father enrolled in an effective parenting program before the jurisdiction hearing, he had missed a "significant" amount of classes and was at risk of being dropped from the program. In addition, Lei's mother, the other adult who was sometimes present when father struck Las, didn't disapprove of father using

9

a belt to discipline Las, and she minimized his conduct, blaming it on Las's behavioral issues.

In sum, substantial evidence supports the court's finding that father's use of excessive physical discipline on Las placed Lei and Lev at risk of being abused or neglected as required by section 300, subdivision (j).

## 2. Recommended Services

Father next argues the court abused its discretion when, as part of Lev's exit order, it recommended he complete various parenting and counseling services. As we explain, father forfeited this argument.

An appellate court " 'ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court.' " (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 672.) A parent must raise a specific objection stating the ground or grounds on which the objection is based. (*Ibid.*) Likewise, " '[u]nder the doctrine of invited error, when a party by its own conduct induces the commission of the error, it may not claim on appeal that the judgment should be reversed because of that error.' " (*In re G.P.* (2014) 227 Cal.App.4th 1180, 1193 (*G.P.*).)

Here, the record shows father asked the court to issue an order recommending he complete various parenting and counseling services. At the disposition hearing, father objected to any order requiring him to participate in court-ordered services, "like parenting, anger management, and/or individual counseling." Father proposed, however, that the "court might recommend … [he] complete those programs but not require it as an order." The court agreed with father and, as part of Lev's exit order, recommended that he participate in the following

10

parenting and counseling services: "(1) Parenting children with Special Needs; (2) Parents Beyond Conflict[;] (3) Individual Counseling to address case issues to include appropriate forms of age-appropriate discipline, childhood trauma, grief and loss, mental health, domestic violence, healthy relationships, appropriate coping skills, child safety, protective parenting and effective coparenting[;] and (4) Conjoint Counseling with the minor when deemed appropriate by child's respective therapist."

Because father requested the court issue an order recommending he complete various parenting and counseling services, he cannot challenge the recommendations in that order on appeal. (*G.P.*, *supra*, 227 Cal.App.4th at p. 1193.) In addition, father does not argue he was prejudiced by the court's recommendations or cite any legal authority explaining why recommendations, as opposed to requirements, should be construed as orders that cannot be changed absent a significant change of circumstances.

### 3. Lev's Visitation Order

Finally, father argues the court abused its discretion when it awarded him monitored visitation with Lev because the child's exit order does not establish a minimum number or frequency of visits. We agree.

The authority to determine the extent of a parent's visitation resides solely with the court. (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1123.) While a court may delegate to third parties the responsibility for managing the details of visits, such as their time, place, or manner, the court must determine whether visits will occur as well as the frequency and length of visits. (*In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314 (*Rebecca S.*).) A court, therefore, abuses its discretion when it

11

awards visitation without ensuring that visitation will in fact occur. (*In re S.H.* (2003) 111 Cal.App.4th 310, 317.) This rule applies to exit orders issued when the court terminates dependency jurisdiction. (*T.H.*, at p. 1123.)

Here, Lev's exit order does not establish the extent of father's visitation with the child. Although the order provides that Lev's mother, a mutually agreed upon monitor, or a professional monitor paid for by father may supervise father's visits, it does not specify a minimum number of visits with Lev that father is entitled to each month. Nor does the exit order specify a minimum number of hours father may visit the child each month.[5] (See *T.H.*, *supra*, 190 Cal.App.4th at p. 1124 [by failing to specify a minimum number of visits per month, parent's right to visitation was " 'illusory' "].) The matter, therefore, must be remanded to allow the court " 'to make a new visitation order that specifies both the frequency and duration' " of father's visits with Lev. (*Rebecca S.*, *supra*, 181 Cal.App.4th at p. 1314.)

---

[5] Unlike Lev's exit order, Lei's exit order specifies that father is entitled to visit Lei at least three times a week for three hours.

## DISPOSITION

The exit order as to Lev is remanded to allow the juvenile court to specify the frequency and duration of father's visits with Lev. The orders terminating dependency jurisdiction are otherwise affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, Acting P. J.

WE CONCUR:

EGERTON, J.

ADAMS, J.